UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLIN JENNINGS,

    Plaintiff,

Case No. 1:12-cv-175

Hon. Gordon J. Quist

v.

MARK KARNITZ, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b) filed by defendants Mark Karnitz and J. Minnerick (docket no. 10).

    **I.**    **Background**

    Plaintiff's complaint is directed at defendants Mark Karnitz, a nurse at the E.C. Brooks Correctional Facility (LRF), and Jeffrey Minnerick, the grievance coordinator at LRF. Plaintiff has alleged as follows. Plaintiff is a prisoner incarcerated by the Michigan Department of Corrections (MDOC). Compl. (Statement of Claim) at ¶ 1. Plaintiff suffers from documented mental illness which includes schizophrenia, manic depression, auditory hallucinations, anxiety problems, suicidal tendencies and medicine phobias. *Id.* Plaintiff also has serious physical health problems from a closed head injury suffered in an automobile accident. *Id.* at ¶ 2. From September 2011 through the filing of the complaint (February 28, 2012), plaintiff tried to seek medical care to ease his psychological suffering and severe physical pain. *Id.* at ¶ 3. From September 7, 2011 through January 13, 2012, plaintiff submitted 37 health care requests. *Id.* at ¶ 4. Plaintiff also

spoke with defendant Karnitz, whom he describes as an "MDOC Health Care provider as the Nurse at this prison facility." *Id.* According to plaintiff, defendant Karnitz, however, provided "absolutely no medical care," refused to examine plaintiff and refused to refer plaintiff to any other competent medical personnel. *Id.* By these actions, defendant Karnitz denied plaintiff all medicare care in violation of plaintiff's Eighth Amendment rights. *Id.* at ¶¶ 4-5.

From October 8, 2011 through January 15, 2012, plaintiff contacted defendant Minnerick by filing 29 grievances for redress against defendant Karnitz's deliberate indifference. *Id.* at ¶ 6.[1] However, defendant Minnerick's "inactions and threats" resulted "unnecessary and wanton infliction of pain" to plaintiff. *Id.* On December 5 2011, defendant Minnerick placed plaintiff on modified access. *Id.* at ¶ 7. According to plaintiff, while on modified access, he had to seek permission from defendant Minnerick "to further grieve his existing grievances" or file new grievances. *Id.*

On December 6, 2011, during a shakedown of plaintiff's cell, defendant Minnerick entered the cell and confiscated all of plaintiff's previously filed grievances and health care requests. *Id.* at ¶ 8. Then, on January 26, 2012, after plaintiff was assaulted by inmates in his cell, he was placed in protective custody, at which time the remainder of his requests to file grievances directed to defendant Minnerick and his health care requests were removed from plaintiff's property. *Id.* at ¶ 9. Each time plaintiff filed a grievance, Defendant Minnerick threatened plaintiff with misconduct violations. *Id.* at ¶ 11. At the last interview conducted by defendant Minnerick on November 28, 2011, Minnerick threatened plaintiff with retaliation if plaintiff did not stop filing grievances against

---

[1] Plaintiff's complaint includes the date "January 15, 20112." Given the context of this date, the court will construe plaintiff's complaint as referencing a grievance filed on January 15, 2012.

defendant Karnitz. *Id.* Minnerick then "made his promise good" by placing plaintiff on modified access on December 5, 2011. *Id.* On December 6, 2011, defendant Minnerick entered plaintiff's cell and confiscated all of plaintiff's grievances and health care requests. *Id.* Plaintiff claims that by engaging in these actions, defendant Minnerick displayed deliberate indifference to plaintiff's serious medical needs and retaliated against plaintiff by "threatening to have housing unit officers 'set-up' Plaintiff with dangerous contraband." *Id.* Plaintiff alleged that defendants' "actions and inactions" violated his rights under the First Amendment (retaliation) and Eighth Amendment (deprivation of medical treatment), causing plaintiff to suffer mental and physical pain and suffering. *Id.* at ¶ 12.

## II. Defendants' motion for summary judgment

### A. Legal Standard

Defendants moved for summary judgment based upon plaintiff's failure to exhaust his administrative remedies prior to filing suit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed.Appx. 885, 888 (6th Cir. 2009). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he

4

seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

### C. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Exhaustion of grievances

In support of their motion, defendants have presented the Affidavit of Richard D. Russell, Manager of Legal Affairs at the MDOC. *See* Russell Aff. (docket no. 11-3). In his uncontested affidavit,[2] Mr. Russell states that he has searched the MDOC's Grievance Tracking database, and as of June 26, 2012, the database reflects that plaintiff did not appeal any grievances to Step III of the MDOC's grievance process. *Id.* at ¶¶ 18-19. There is simply no evidence before the court that plaintiff properly exhausted any grievances.

In an apparent effort to explain his failure to exhaust any grievances, plaintiff has alleged that on December 5, 2011, defendant Minnerick placed him on modified access. Compl. (Statement of Claim) at ¶ 7. According to plaintiff, "[t]his meant that before Plaintiff could further grieve his existing grievances, or begin new grievances, Plaintiff had to write J. Minnerick for permission to file further grievances." *Id.*

A prisoner is placed on modified access for abusing the grievance system.

> A prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA [Field Operations Administration] Area Manager for an initial period of not more than 90 calendar days. If the prisoner or parolee continues to file such grievances while on modified access, the Warden or FOA Area Manager may extend the prisoner's or parolee's modified access status for not more than an additional 30 calendar days for each violation. In CFA [Correctional Facilities Administration], a recommendation to place a prisoner on modified access shall be submitted only by the Grievance Coordinator and shall include a list of the grievances forming the basis for the recommendation and the reason for the recommendation.

---

[2] While plaintiff filed a response to defendants' motion, entitled an "Opposition to defendants' motion for summary judgment with memorandum of law incorporated therein" (docket no. 13), he has not presented an affidavit, copies of grievances, or any other evidence to counter the statements of fact as set forth in the two affidavits submitted by defendants.

MDOC Policy Directive, 03.02.130 ¶ HH.

When a prisoner is on modified access, his proposed new grievances are screened by a grievance coordinator to determine whether to allow the prisoner to file a grievance:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G.

MDOC Policy Directive, 03.02.130 ¶ KK.

As an initial matter, there is no evidence that plaintiff's placement on modified access status on December 5, 2011, prevented him from appealing grievances filed prior to that date. The Sixth Circuit has rejected the claim that MDOC prisoners on modified access are unable to exhaust administrative remedies as required by the PLRA. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir. 2005). In reaching this determination, the Court acknowledged that MDOC prisoners on modified access can exhaust new non-frivolous grievances which are dismissed by the grievance officer:

> With regard to access to the courts, [the MDOC prisoner's] argument is that, as a result of the modified access process, he is unable to exhaust administrative remedies, and thus he cannot ever file a claim in federal court based on a non-frivolous grievance dismissed by a grievance officer. But this cannot be correct; if a grievance officer dismissed a non-frivolous complaint by [the prisoner], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g.*, *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a

7

plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies).

*Id.*

Here, defendants have presented evidence that petitioner has failed to properly exhaust any grievances. Plaintiff has failed to present an affidavit or other evidence that, while on modified access, he requested a grievance form from defendant Minnerick for an issue that was grievable, met the criteria for filing a grievance as set forth in MDOC Policy Directive, 03.02.130 ¶ KK, or exhausted a new grievance under the procedure outlined in *Walker*, 128 Fed. Appx. at 446-47. While plaintiff alleged his understanding that he could not appeal and exhaust pending grievances while on modified access without seeking defendant Minnerick's permission,[3] he has not submitted an affidavit or other evidence to establish that he was refused forms to appeal existing grievances. Viewing the facts in the light most favorable to the non-moving party (i.e., plaintiff), there is no evidence that plaintiff properly exhausted a claim against either defendant. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment.

---

[3] The court notes that the policy directive regarding modified access does not explicitly restrict a prisoner's ability to exhaust pending grievances. *See* MDOC Policy Directive, 03.02.130 ¶¶ HH-LL.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 10) be **GRANTED**.

Dated: February 4, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).